MILDRED HUTCHINSON et al., complainants-appellants,

*v.*

GEORGE T. CONKLING, executor, et al., defendants-respondents.

[Submitted May 27th, 1932. Decided October 17th, 1932.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bigelow, who filed the following opinion:

"This suit is brought to impress upon a certain house and lot in Glen Gardner, Hunterdon county, a trust in favor of the heirs of Martha E. Eversole, deceased. This property was conveyed May 17th, 1919, by Harry A. Hunt and others, to Mrs. Eversole's daughter, Edna May Conkling, wife of George T. Conkling. Mrs. Conkling died January 8th, 1927, leaving a will whereby she directed that 'everything that I receive from my mother's estate to be divided equally between my beloved husband, George T. Conkling, and son, George T. Conkling, Jr.,' and whereby she devised the residue of her estate to her husband. She gave a power of sale to her execu-

tors, but this power has not been exercised. Legal title to the land, by virtue of this residuary devise, is now in George T. Conkling. The executors of the will, the husband and the son of Mrs. Conkling, are the defendants to this suit.

"Mrs. Eversole died June 21st, 1926, intestate, leaving as her heirs her children, Mrs. Conkling, Howard D. Eversole, Robert G. Eversole and William B. Eversole. William died intestate April 25th, 1928, leaving a widow and two daughters, Minnie Dow and Mildred Hutchinson. This suit was begun September 14th, 1928, by Mrs. Hutchinson as sole complainant but on October 17th, 1929, her mother, her sister and her two uncles named above joined her as complainants.

"Mrs. Eversole in 1919 was a widow, sixty years of age, living in Somerville where she kept a large rooming house. She had been suffering from gall stones for some time and occasionally this trouble was very acute, causing her most intense pain so that she had to remain in bed several hours or perhaps a day or so. Otherwise, her health seems to have been normal, although some of the witnesses said she was very nervous. Mrs. Eversole's relations with all her children were pleasant although she did not see much of her sons, Howard and William, at this time. Howard was living in Lehighton, Pennsylvania, and William, in Newark. They each visited their mother a couple of times a year. Robert was living in Dunellen in 1919 and used to see his mother on an average of a couple of times a week. The Conklings were living in Glen Gardner where Mr. Conkling was employed in the state sanitarium. Mrs. Conkling was most attentive to her mother, calling on her about twice in each week and taking care of her whenever she had an acute attack. Mrs. Conkling also aided her mother with her banking and business.

"From 1910 until June 18th, 1919, Mrs. Eversole maintained an account in the Bound Brook Trust Company. She made good-sized deposits in this account from time to time until the middle of 1914, after which no further deposits were made. But in March, 1915, an account was opened in the name of Edna M. Conkling in the First National Bank of Somerville and deposits were made in this account to such an

extent that at one time there was a balance of nearly $5,000. This money, although deposited in Edna's name, belonged, in fact, to her mother. The incident is of importance as showing the extent to which Mrs. Eversole trusted her daughter.

"In April, 1919, Mrs. Conkling persuaded her mother to purchase the Glen Gardner property, and to have title put in Mrs. Conkling's name. There is evidence that Mrs. Eversole demurred, not that she wanted title in her own name but that she desired the deed to run in favor of all her four children equally. She consented to Mrs. Conkling's plan. Of the purchase price of this property, $3,000 was paid in cash. I find that this entire cash consideration was furnished by Mrs. Eversole out of her money on deposit in Mrs. Conkling name. Mr. Conkling said that he paid $600 on account of the purchase price but I believe he is mistaken. It does not appear that Mrs. Eversole consulted anyone except Mr. and Mrs. Conkling as to the advisability of purchasing the Glen Gardner property. Title was passed in the office of a Mr. Eyers in Glen Gardner, but he died before this suit was brought.

"After the purchase of the house, the Conklings moved into it but Mrs. Eversole continued to live in her house in Somerville. Her health, however, did not permit her to manage so large a rooming house, so on June 18th, 1919, she purchased a smaller house on Main street, in Somerville, for $6,250, of which $2,000 was secured by mortgage and the balance, $4,250 was paid in cash. Into this purchase went the remaining funds on deposit in Mrs. Conkling's name, part of the funds which were in the Bound Brook Trust Company, and, according to Robert Eversole, $900 which he then loaned her. Before she purchased this property, she consulted a relative, Mr. Vandoren, as to its value and engaged Judge Beekman to attend to the legal side of the purchase. Mrs. Eversole moved into the Main street house but remained there only five months when she went to live with her daughter in Glen Gardner.

"For five weeks at the beginning of 1921 and for three

months in the summer of the same year, Mrs. Eversole was away from Glen Gardner employed as a nurse or as a housekeeper. From October, 1922, until April, 1924, she was continuously so employed. Then she returned to Glen Gardner where she remained until her death in 1926. The Conklings continued to live in this house until August, 1924, when they moved to a house provided by the state in the sanitarium grounds. When they left Mrs. Eversole, her son, Robert, came to live with her and continued to live at the Glen Gardner property until shortly after Mrs. Conkling's death when George T. Conkling, as executor, brought proceedings before a justice of the peace to compel him to surrender possession.

"At the hearing of this cause, I was in much doubt as to the effect of section 4 of the Evidence act. The executors of Mrs. Conkling's will are parties to this suit but title to the premises in question is not vested in them and it does not appear that there was an insufficient personalty in her estate to meet expenses of administration, debts or legacies. The controversy is primarily between the complainants who claim an equitable estate as heirs of Mrs. Eversole, and George T. Conkling, who derives legal title from his wife's will. I concluded that the statute does not prohibit testimony by a party as to conversations or transactions with either Mrs. Eversole or Mrs. Conkling.

"I am satisfied that this ruling was correct so far as it permitted the defendants to testify to conversations and transactions with Mrs. Eversole; but the admission of testimony by complainants relating to conversations and transactions with Mrs. Conkling has a less satisfactory basis. The executors of Mrs. Conkling's will are given power of sale; they are proper parties to the suit; this is perhaps enough to require the exclusion of the testimony. *Lipp* v. *Fielder, 72 N. J. Eq. 439.* However, I have given this evidence weight on the assumption that it is properly in the case.

"The complainants presented testimony as to statements by Mrs. Eversole and the defendants called witnesses to statements by Mrs. Conkling. In each case, the opposite party

objected that the evidence violated the hearsay rule. I have given effect to such testimony only to the extent of indicating the character of possession of the premises in question, that is, to show whether or not Mrs. Eversole and Mrs. Conkling, respectively, lived there under a claim of ownership.

"It appears that Mrs. Eversole, at least after she moved to Glen Gardner, commonly referred to the property as 'my house,' but that on a few occasions she referred to it as her daughter's. Judge Beekman testified that when Mrs. Eversole consulted him concerning the purchase of the Main street property, she referred to the Glen Gardner property and remarked that she had purchased it for Mrs. Conkling. Judge Beekman is one of the executors of Mrs. Conkling's will and for that reason his testimony is attacked as that of an interested witness.

"Mrs. Conkling also usually called the property her own, although some of the complainants testified that she told them the property belonged to her mother. Also, a Mrs. Carpenter testified that Mrs. Conkling said that the house was bought with Mrs. Eversole's hard earned money and that she always said it was her mother's property, and that it was to be her mother's as long as she lived and then was to belong to Mrs. Conkling.

"I find it difficult satisfactorily to ascertain the intent which was in the minds of Mrs. Eversole and Mrs. Conkling at the time of the purchase of this property. This difficulty is largely due to the lapse of time, the blurring of the memory of the witnesses who still live, and the death of others. Mrs. Eversole, Mrs. Conkling, William Eversole, and Mr. Eyers who closed the title, have all passed away. Whatever doubts arise by reason of this delay must be resolved against the complainants. Mrs. Eversole in her lifetime could have maintained this suit. She was away from the immediate influence of Mrs. Conkling from early in 1922 until her death in 1926; during the last two years of this period her son, the complainant Robert, was living with her. At any time after Mrs. Eversole's death, June 21st, 1926, her three sons could have sued to recover the property; but no action was taken

until September 14th, 1928, when Mrs. Hutchinson filed the bill and the other complainants did not act until October 17th, 1929—more than three years after Mrs. Eversole's death.

"The complainants base their claim on the following alleged circumstances: (1) that Mrs. Eversole paid the purchase price; (2) that she reposed great trust and confidence in her daughter; (3) that she was an aged woman incapable of transacting business and acting without independent advice; (4) that the transaction was improvident from the standpoint of Mrs. Eversole; (5) that it does not appear that the transaction was made in a fair, open and above-board manner and was fully understood by Mrs. Eversole, and (6) that there is insufficient evidence of a presently effective gift.

"It is true that Mrs. Eversole paid the purchase price and, therefore, that the transaction can be upheld only as a gift. I will not attempt to analyze the cases which have developed the tests determining the validity of gifts. *Pearce* v. *Stines, 79 N. J. Eq. 51,* is a sufficient guide. Mrs. Eversole had great confidence in and trusted her daughter. But I do not think that it appears that her will was subordinate to her daughter's or that her trust and confidence were such as to lead her into making a gift which she did not actualy intend to make. She was sixty years old and weakened in body but her mind appears to have been perfectly clear. She was able, in 1921 to 1924, to accept employment as a housekeeper in several different families. The gift of $3,000 did not impoverish her. At the time of her death, she left other property assessed for the purpose of the inheritance tax at about $9,000. Whether she had independent advice, I do not know. The fact that no witnesses have been presented, is not conclusive on this point; it merely indicates that Mr. Conkling does not know who, if anyone, advised her. I do not think there is any evidence of secrecy about the transaction. The complainant's witness, Mrs. Parks, testified that immediately after the purchase, she told Mrs. Eversole's three sons about the transaction. Mrs. Eversole herself mentioned it to Judge Beekman.

"On the whole, I find that the bill of complaint must be

dismissed. While this court is always ready to establish a trust or avoid an inequitable transaction when the facts are clearly proved, it should not upset title to land which has been vested for ten years, when death or other circumstances prevent a clear showing of the facts and when a decree would necessarily be based in large part on surmise."

For the appellants, *W. Reading Gebhardt.*

For the respondents, *T. Girard Wharton.*

PER CURIAM.

The decree appealed from will be affirmed, for the reasons expressed in the opinion filed by Vice-Chancellor Bigelow.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—None.