14 N.J. Super. 225 (1951)
81 A.2d 826
VIOLET DALY AND HELEN MOSKAL, PLAINTIFFS,
v.
JULIA LANUCHA AND LINDA LANUCHA, A MINOR, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 19, 1951.
*227 Messrs. Feder & Rinzler, attorneys for plaintiffs.
Messrs. Kapelsohn, Lerner, Leuchter & Reitman, attorneys for defendants.
GRIMSHAW, J.S.C.
This action is brought by two sisters against the widow and minor child of their deceased brother. Involved in the controversy is a tavern and five lots situated in the Borough of Wallington, in Bergen County. The complaint, in effect, seeks to have declared a resulting trust in the property. However, since the property has been sold, the plaintiffs now seek to recover two-thirds of the amount received from the sale.
The plaintiffs are the daughters of Ludwick and Katarzyna Lanucha. The defendants are the widow and infant daughter of Stanley, the deceased son of Ludwick and Katarzyna Lanucha.
The property was originally owned by Katarzyna Lanucha and her sister, Eva Podsada. In 1927 the Podsada interest was conveyed to Katarzyna Lanucha. In 1936 a mortgage upon the property, held by the Polish-American Building & Loan Association, was foreclosed. The Lanuchas continued to live in the premises after the foreclosure. Ludwick Lanucha operated the tavern and the family lived above it. Ludwick paid rent of $75 per month.
Plaintiffs' story of the sequence of events thereafter is as follows: In 1939 the building and loan association was being liquidated. Its shares were selling at a discount. Officers of the association urged Ludwick to take advantage of the opportunity to buy up shares which could be used for the repurchase of the property. Lanucha decided to take the advice. With $4,500 obtained from the Wawel Building and Loan Association he purchased shares of the Polish-American Building and Loan Association which had a par value of $8,100. With these shares and cash in the sum of $900 the property was purchased.
*228 According to the plaintiffs the building and loan association was reluctant to deed the property back to Ludwick and Katarzyna Lanucha since they had been parties to the foreclosure. A family conference was held to decide who should take title. Violet, one of the daughters, was married, and Helen, the other daughter, was too young. So the choice fell upon Stanley, the son, who was 20 years of age and unmarried. In selecting Stanley as the grantee, Ludwick is alleged to have told him that the conveyance would be to Stanley in name only, and that Ludwick would continue to be the boss.
The building and loan association conveyed the property to Stanley Lanucha on October 30, 1939. On the same day Stanley Lanucha executed two bonds and mortgages to the Wawel Building and Loan Association, one for $4,000 and the other for $500. The installment payments called for by the mortgage were made by Ludwick Lanucha. He paid off the balance of $2,554.11 in 1944.
Ludwick died intestate on November 21, 1944. While he lived he ran the family with an iron hand. His was the ultimate decision on all matters concerning the business. He directed the affairs of his children. When he died, his wife Katarzyna took over the control and held it until 1947.
Stanley entered the Army in 1941. He was out of the country most of the time between then and 1946, when he received his discharge from the service. Then the question arose as to the manner in which the business should be conducted. Katarzyna was old and ailing. She wanted to be relieved of her responsibilities. Another family conference was held. It was decided that Stanley should run the business. The liquor license was transferred to him upon the understanding, say the plaintiffs, that the girls would get their share. Katarzyna died intestate December 17, 1947.
The tavern was remodelled at an expense of $10,700. The contract for the work which was to be done was signed by Stanley. The financing of the project was accomplished by a bond and mortgage for $8,000 executed by Stanley, supplemented *229 by loans from Helen Moskal, one of the plaintiffs, and from a niece of Katarzyna. Both loans were subsequently repaid by Stanley Lanucha.
Stanley's administration of the tavern business was, apparently, not very successful. From time to time he borrowed money from his sisters. The loans, however, were all repaid. Stanley was anxious to sell the business and leave Wallington. According to the plaintiffs, at one point he offered to sell his interest to Violet for $10,000 but she felt that the price was too high. Finally Stanley contracted to sell the property for $26,500. Plaintiffs say that he consulted them and they agreed, provided they received their share. Stanley died on May 9, 1950, before the deal was consummated. After his death his widow, the defendant Julia Lanucha, completed the transaction. The plaintiffs made demand upon her for two-thirds of the proceeds of the sale. She refused to comply with the demands and this litigation resulted.
No extensive citation of authorities is needed to support the proposition that where the consideration for the purchase of property is paid by one person and title is taken in the name of another, a resulting trust will be presumed to arise in favor of the one who paid the purchase price. This rule results from the equitable theory that the consideration draws to it the beneficial ownership. However, where the conveyance is not made to a stranger but to one whom the purchaser is under a legal obligation to maintain, such as a wife or child, the consideration of love and affection will support the conveyance and no resulting trust will be presumed to arise from the payment of the consideration. In such a case the presumption is that a settlement or advancement was intended. Of course, the presumption may be overcome by evidence disclosing a contrary intention. But that evidence must be certain, definite, reliable and convincing. Strong v. Strong, 136 N.J. Eq. 103 (E. & A. 1944); Herbert v. Alvord, 75 N.J. Eq. 428 (Ch. 1909).
I am satisfied that Ludwick Lanucha provided the money with which the property was repurchased. And it *230 was he who paid off the mortgage of the Wawel Building & Loan Association from the proceeds of the business. But, since he took title in the name of his only son the presumption of a gift arises. To overcome this presumption of a gift, plaintiffs rely upon statements alleged to have been made by Ludwick, Katarzyna and Stanley, most of which were made long after the conveyance. Testimony concerning the statements was given by the plaintiffs and their husbands, all vitally interested in the outcome of the litigation, and consisted of declarations that the girls would get their share of the business.
Defendants, on the other hand, produced evidence that it was Stanley who signed the contract for the remodelling of the tavern. He executed the bond and mortgage, from the proceeds of which the money to finance the project was obtained. And it was Stanley who ran the business and paid the bills. The defendants also produced witnesses who testified that both Ludwick and Katarzyna had told them that the girls had each been given one and one-half lots and that the balance of the property belonged to Stanley.
I am of the opinion that the plaintiffs have failed to present evidence sufficiently reliable and convincing to overcome the presumption of a gift of the real property to Stanley. Testimony of statements made by decedents, given years after the death of the persons making the statements, is a slender reed on which to rest a judgment voiding a title of 12 years' standing.
Had Ludwick Lanucha desired to have title to the property placed in his own name, he had ample opportunity between 1939 and the date of his death in 1944, to make the necessary arrangements. He did not do so. All he did was request Stanley to convey one and one-half lots to each of his sisters. To this Stanley readily acquiesced.
Between the death of Ludwick Lanucha in 1944 and the death of Stanley in 1950, plaintiffs did nothing to establish their claim to shares in the real property. They excuse their inaction by saying that Stanley always promised to take *231 care of them. In view of the low opinion which they had of Stanley and his business ability, coupled with their dislike for Stanley's wife, the excuse does not ring true. Instead of vigorously asserting their rights while Stanley was alive and able to oppose them, plaintiffs waited until death had silenced him before taking action. As was pointed out by Vice-Chancellor Bigelow in the case of Hutchinson v. Conkling, 111 N.J. Eq. 471 (E. & A. 1932) in an opinion adopted by the appellate court, while this court is always ready to establish a trust or avoid an inequitable transaction when the facts are clearly proved, it should not upset title to land which has been vested for 12 years, when death or other circumstances prevent a clear showing of the facts and when a judgment would necessarily be based in large part on surmise.
The same comment is applicable to plaintiffs' claim to a share of the proceeds of the sale of the business. The time to assert that claim was during Stanley's lifetime. Now it is too late.
Judgment for the defendants.